# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LORI JEAN GOODLOW**, | Case No. 3:13-cv-01396-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** Acting Commissioner of Social Security | |
| Defendant. | |

Lisa R.J. Porter, KP LAW LLC, 16200 SW Pacific Hwy, Suite H-280, Portland, OR 97224. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Richard M. Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Lori Jean Goodlow seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her application for disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act. For the reasons stated below, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. The Application

Plaintiff was born on July 28, 1970 and is 44 years old. She filed for disability insurance benefits and supplemental security income on October 29, 2009, alleging a disability onset date of December 5, 2005. AR 21. Plaintiff alleged disability based on bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder, degenerative joint disease of the left knee, carpal tunnel syndrome, schizophrenia, left hip pain, gastroesophageal reflux and a history of drug and alcohol abuse. AR 23. The claim was denied initially on April 9, 2010, and upon reconsideration on December 31, 2010. AR 21. An administrative hearing was held before an ALJ on August 10, 2011. *Id.* The ALJ denied Plaintiff's claim, finding that she was not disabled, as defined under the Social Security Act, at any time from December 5, 2005, the alleged onset date, through December 31, 2010, the date last insured. AR 23. The Appeals Council denied review, making the ALJ's decision final and entitling Plaintiff to review by this Court under 42 U.S.C. § 405(g). AR. 21.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

PAGE 4 – OPINION AND ORDER

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2010. AR 23. The ALJ then applied the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of December 5, 2005. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder, degenerative joint disease of the left knee, carpal tunnel syndrome, and history of drug and alcohol abuse." *Id.* The ALJ found that other symptoms and complaints in Plaintiff's medical records, including schizophrenia, left hip pain, and gastroesophageal reflux, were unsupported by acceptable medical documentation. AR 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the relevant regulations. *Id.*

PAGE 5 – OPINION AND ORDER

The ALJ next assessed Plaintiff's RFC. The ALJ found that Plaintiff retained the following RFC:

> capacity to perform light work as defined in 20 CFR 404.1567(b) except: stand and walk two hours at a time and six hours in an eight-hour workday; sit two hours at a time and eight hours in an eight-hour workday; occasionally climb ropes, ladders, and scaffolds; understand, remember, and perform simple and detailed – but not complex – tasks, consistent with SVP 1 or SVP 2; no more than superficial, infrequent public contact; work in proximity to co-workers, but not in a team or tandem setting; moderate noise level in the environment; and no work in a fast-paced environment with strict production quotas.

AR 25.

At step four, the ALJ determined that Plaintiff's RFC rendered her unable to perform any past relevant work. AR 30. At step five, based on the testimony of a vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including work as a sorter, linen folder, and collator. AR 31. Thus, the ALJ ruled that Plaintiff was not disabled as defined by the Social Security Act. AR 32.

## DISCUSSION

Plaintiff argues that the ALJ erred in four respects: (A) the ALJ erred in finding that Sandra Ford, PAC, was not an acceptable medical source[1]; (B) the ALJ failed properly to incorporate lay witness evidence in the RFC; (C) the ALJ erred in concluding that Plaintiff's activities of daily living were evidence of the ability to perform full-time work; and (D) the ALJ omitted the effects of specific medical diagnoses and opinions, leading to an incorrect determination of Plaintiff's RFC.

---

[1] The Court notes that Plaintiff's brief repeatedly claims that the ALJ erred in finding that Plaintiff's treating providers (plural) were not acceptable medical sources. Plaintiff, however, indicates only that the ALJ found the testimony of one provider, physician's assistant Sandra Ford, not to be an acceptable source. Accordingly, the Court addresses Plaintiff's medical source contention only as to the testimony of Ms. Ford.

**A.  Testimony of Physician Assistant Sandra Ford.**

Plaintiff objects to the ALJ's finding that physician assistant Sandra Ford was not an acceptable medical source under Social Security regulations. Plaintiff also objects to the ALJ's decision to give Ms. Ford's testimony little weight.

**1.   Whether Ms. Ford is an acceptable medical source**

Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, and licensed podiatrists. 20 C.F.R. § 404.1513(a). Nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered other medical sources. 20 C.F.R. § 404.1513(d)(1). The ALJ may discount testimony from other medical sources by giving reasons germane to each witness. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

An opinion from someone other than an acceptable medical source may be "considered that of an 'acceptable medical source'" where that other source "was working closely with, under the supervision of" an acceptable medical source. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)).

Ms. Ford is not considered  a medically acceptable treating source under the Social Security regulations because she is a physician's assistant, *see* 20 C.F.R. § 404.1513(d)(1), and the record does not show that she worked under a physician's close supervision. The ALJ did not err in concluding that Ms. Ford was not an acceptable medical source.

**2.   Whether the ALJ gave germane reasons for discounting the opinions of Ms. Ford**

Because Ms. Ford is not an acceptable medical source, the ALJ needed only to provide germane reasons for discounting Ms. Ford's testimony. *Molina*, 674 F.3d at 1111. The ALJ provided three reasons: (1) Ms. Ford's testimony was inconsistent with the treatment records

from medically acceptable treating sources; (2) Plaintiff's daily activities and social life show that Plaintiff was not as limited as Ms. Ford indicated; and (3) Ms. Ford's testimony does not address the period from the alleged onset of disability through February 2009. Plaintiff does not dispute these reasons, but argues generally that the ALJ erred in giving greater weight to the opinions of Dr. Ronald Duvall, Dr. Lawrence Binder, and Dr. Dorothy Anderson than to the opinion of Ms. Ford.

Plaintiff relies on *Ryan v. Commissioner*, 528 F.3d 1194 (9th Cir. 2008), for the proposition that it is legal error for the ALJ to provide greater weight to a non-treating medical examiner in favor of treating providers who have provided longitudinal treatment to Plaintiff. Plaintiff's argument misconstrues that case. *Ryan* states only that "the opinion of an examining *physician* is entitled to greater weight than the opinion of a nonexamining *physician*." *Id.* at 1198 (emphasis added). *Ryan* makes no mention of "other" sources as defined under 20 C.F.R. § 404.1513(d), which, as explained above, are not entitled to the same level of deference as acceptable medical sources, *see* 20 C.F.R. § 404.1527; *Molina* 674 F.3d at 1111-12.

The ALJ needed only to provide germane reasons for discounting Ms. Ford's opinions in favor of the conflicting testimony of other medical providers, and he did so. Accordingly, the ALJ did not err in giving Ms. Ford's opinion lesser weight.

## B. Lay Witness Testimony

Plaintiff contends that the ALJ failed properly to incorporate lay witness evidence in determining Plaintiff's RFC. Lay witness testimony as to a claimant's symptoms is competent evidence that the Commissioner must take into account, unless he or she expressly decides to disregard such testimony, in which case "he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ "need not discuss all evidence presented to [him or] her. Rather, [he or] she must explain why 'significant probative evidence

has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harri*s, 642 F.2d 700, 706 (3d Cir. 1981)). In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina,* 674 F.3d at 1114.

Plaintiff presented evidence from two lay witnesses. First, Plaintiff's friend, William Harold, stated that Plaintiff suffered from anxiety. AR 29. Mr. Harold further stated that Plaintiff enjoyed shopping, doing laundry, cooking, and taking care of her dog. *Id.* He also noted that she was able to take college classes, attend church, go bowling, play video poker, and raise her daughter. *Id.* Mr. Harold noted, however, that Plaintiff would often "shut down" and often lacked motivation. *Id.* The ALJ found that these statements were credible to the extent Mr. Harold was reporting what he saw and heard, but noted that the activities of daily living reported by Mr. Harold were inconsistent with Plaintiff's allegations of total disability. *Id.* This finding is a sufficient reason for not fully crediting Harold's testimony as supporting a finding of total disability.

Plaintiff also presented lay witness testimony in the form of a letter dated August 2011 from Plaintiff's sister, Leslie Goodlow. AR 30. In this letter, Ms. Goodlow stated that her experience as a social worker led her to conclude that her sister was incapable of productively working. *Id.* Ms. Goodlow provided a lengthy history of Plaintiff's troubled upbringing, struggle with raising her children, and drug and alcohol problems. *Id.* Ms. Goodlow stated that Plaintiff often will appear fine for periods of time, only to later demonstrate severe psychological symptoms, including hallucinations, suicidal ideation, hypervigilance, panic attacks, agitation,

crying, trouble sleeping, poor interpersonal relationships, and poor decision making. *Id.* The ALJ found these statements credible to the extent reports of what has been seen and heard by Ms. Goodlow are accurate. *Id.* The ALJ found, however, that Plaintiff's daily activities and medical evidence do not support the degree of limitation noted by Ms. Goodlow and that inconsistent statements made by Plaintiff could have given Ms. Goodlow an inaccurate impression of Plaintiff's symptoms. *Id.* The ALJ further emphasized that Ms. Goodlow, despite being a social worker, is not one of Plaintiff's treating providers. *Id.* The Court finds that the ALJ gave germane reasons for discounting the testimony of Ms. Goodlow.

Plaintiff also argues that the ALJ erred in rejecting the lay witness statements on the basis of their inconsistency with clinical support. This argument is without merit. An ALJ may discount lay testimony if it conflicts with the medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); *Vincent*, 739 F.2d at 1395 (proper for ALJ to discount lay testimony that conflicts with available medical evidence). Plaintiff cites *Bruce v. Astrue*, 557 F.3d 1113 (9th Cir. 2009), to support her contention that the ALJ may not reject lay witness evidence merely because it is not supported by the medical evidence in the record. It is true that in *Bruce* the Ninth Circuit held it was improper for the ALJ to discredit testimony of claimant's wife as not supported by medical evidence in the record. *See Bruce*, 557 F.3d at 1116. In so holding, the Ninth Circuit relied on its prior decision in *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), which held that an ALJ improperly rejected the testimony of claimant's family on the basis that medical evidence did not corroborate claimant's symptoms, because in so doing the ALJ violated the Commissioner's instruction "to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her

medical records." *Bruce*, 557.3d at 1116. The Court of Appeals in *Bruce*, however, did not address the Ninth Circuit's earlier decisions in *Bayliss*, *Lewis*, or *Vincent*, which, as explained above, expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511 (citing *Vincent*, 739 F.2d at 1995); *see also Bayliss*, 427 F.3d at 1218. Accordingly, it is not clear that *Bruce* is on directly on point.

Other decisions from this Court, however, have clarified the distinction between the Ninth Circuit's *Vincent/Lewis/Bayliss* line of cases and the *Smolen/Bruce* line of cases. In *Atwood v. Astrue*, 742 F. Supp. 2d 1146, 1152 (D. Or. 2010), Judge Haggerty cited *Lewis* for the proposition that an ALJ may properly discredit lay witness testimony when the testimony conflicts with the medical evidence, and *Bruce* for the proposition that the ALJ may not discredit such testimony when the medical records are simply silent regarding the restriction described by the lay witness. Similarly, in *Glover v. Astrue*, 835 F. Supp. 2d 1003 (D. Or. 2011), Judge Hernandez explained:

> The governing regulations make clear that lay testimony that conflicts with or is inconsistent with the medical evidence may be rejected on that basis at any point in the sequential disability analysis. If the lay testimony does not actually conflict with, or is not inconsistent with, the medical evidence, the ALJ may still reject the lay witness testimony after evaluating and discussing the relevant evidence, including noting whether the lay testimony is or is not supported by or corroborated by the objective medical evidence. But, this discussion must occur within the parameters otherwise applicable to the evaluation of evidence generally and to the evaluation of lay witness testimony in particular.

*Id.* at 1012.

Here, the ALJ gave significant weight to the testimony of Dr. Duvall, Dr. Anderson, and Dr. Binder, and the ALJ demonstrated that the medical testimony conflicted with the lay testimony of Mr. Harold and Ms. Goodlow. The medical evidence was not, therefore, silent on the limitations ascribed by Mr. Harold and Ms. Goodlow, but was in conflict with those

conclusions. Accordingly, the ALJ did not err by discrediting lay witness testimony because it was inconsistent with the medical evidence.

Furthermore, even if the Court were to accept Plaintiff's interpretation of *Bruce*, the ALJ did not discount the lay witness testimony of either Mr. Harold or Ms. Goodlow solely because it was inconsistent with the medical evidence. Rather, the ALJ provided three germane reasons for discounting the testimony of William Harold and Leslie Goodlow: (1) lay witness testimony was inconsistent with the objective medical evidence; (2) lay witness testimony was inconsistent with Plaintiff's reported activities of daily living; and (3) the testimony of the lay witnesses was highly dependent on information provided by Plaintiff, whose own statements were found to be inconsistent. The other two reasons provide independent bases for affirming the ALJ's decision to discredit the lay witness testimony. They also render the ALJ's reliance on the conflict with the medical evidence appropriate. *See Bond v. Astrue*, 2010 WL 4272870, at *3 (C.D. Cal. Oct. 25, 2010) (An ALJ "may reject the testimony of a claimant at least in part on the grounds that it conflicts with the medical records. It would not be sensible that the claimant's own statements could be rejected on such a basis, but that the statements of third-party observers could not be so treated."). Accordingly, the ALJ's decision to discount the lay witness testimony of Mr. Harold and Ms. Goodlow was without legal error.

## C. Plaintiff's Credibility

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When

doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186 (July 2, 1996). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1997.

Plaintiff argues that the ALJ erred in finding that her reported daily activities were not indicative of disability. Moreover, Plaintiff contends that inconsistency in Plaintiff's testimony is an insufficient reason to find that Plaintiff is not credible. Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina*, 674 F.3d at 1112-13. For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151, at *4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the

level of activity be inconsistent with the claimant's claimed limitations to be relevant to his credibility).

The ALJ discounted Plaintiff's testimony because: (1) her activities of daily living are inconsistent with her allegation of a totally disabling condition; (2) she has a history of making inconsistent statements with respect to her substance abuse; (3) she received only minimal treatment for her allegedly totally disabling conditions; and (4) her alleged limitations are not supported by the medical evidence. Plaintiff objects only to the ALJ's conclusion that Plaintiff's activities of daily living are inconsistent with her allegations of disability. Because Plaintiff does not object to the other three reasons provided by the ALJ, and those reasons are specific, clear, and convincing reasons to discount Plaintiff's credibility, the ALJ did not err in discounting Plaintiff's credibility.

Moreover, the ALJ properly discredited Plaintiff's testimony by identifying inconsistencies between her complaints and her activities of daily living. *See Burch*, 400 F.3d at 680-81. The ALJ specifically noted that Plaintiff's activities of daily living show that she was not as limited as she alleged. AR 27. The ALJ noted that Plaintiff took college classes, attended church, did chores, cooked, drove, played video games, went bowling, and often socialized with friends. *Id.* Furthermore, the ALJ emphasized that Plaintiff cared for her daughter and her dog. *Id.* Plaintiff contends that the activities of daily living are not necessarily in conflict with Plaintiff's alleged limitations because physical and mental symptoms may vary in their intensity and effects. In essence, Plaintiff argues for a more favorable interpretation of the evidence. Even if Plaintiff offers a rational interpretation of the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch,* 400 F.3d at 679. Because the ALJ's interpretation is a rational reading of the record, the Court

will not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1190. The inconsistencies between Plaintiff's activities of daily living and her alleged symptoms are specific, clear, and convincing reasons for discrediting her testimony.

**D.  The ALJ's RFC Determination**

An ALJ must consider "all of [a claimant's] medically determinable impairments," including "medically determinable impairments that are not 'severe,'" in making an RFC determination. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ is required to assess work-related activities that can be performed on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). SSR 96-8p explains that the RFC should be the *most* an individual can do despite limitations and impairments. SSR 96-8p, *available at* 1996 WL 374184 (July 2, 1996). Further, the "RFC assessment considers only functional limitations and restrictions that result from an individual's *medically determinable* impairment or combination of impairments, including the impact of any related symptoms." *Id.* at *1 (emphasis added); *see also* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1528(b)-(c). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). An ALJ's findings, however, need only be consistent with relevant assessed limitations and not identical to them. *Turner*, 613 F.3d at 1222-23 (holding that there is no conflict to resolve when an ALJ incorporates limitations that are "entirely consistent," if not identical, to a doctor's assessed limitations into the RFC); *Batson*, 359 F.3d at 1198 (finding that substantial evidence supported ALJ's RFC determination because the limitations included in the RFC were "consistent with"—albeit not identical to—the examining therapist's).

Plaintiff argues that the ALJ omitted the effects of specific medical diagnoses and opinions at step five of the sequential analysis, leading to an incorrect determination of Plaintiff's RFC. More specifically, Plaintiff contends that the ALJ failed to consider Dr. Binder's

statement that Plaintiff would likely have difficulties in responding to authority figures.

Dr. Binder's testimony, however, does not unequivocally state that Plaintiff would have conflict with supervisory personnel. Dr. Binder's testimony on this point is as follows:

> Social and interpersonal problems likely will not affect her in small group interactions with peers, but the problems that she had with her caseworker suggest she *may* have difficulty with supervisors. I don't know, however, whether or not she has a justifiable grievance against her caseworker. *I did not want to get into the issue, because I would be hearing only one side of the story*.

AR 321 (emphasis added). Contrary to Plaintiff's claim, Dr. Binder's testimony in the record shows only that there is a possibility, supported by no more than Plaintiff's own statements, that Plaintiff would have difficulty with supervisors. Dr. Binder's testimony did not directly address this issue as Plaintiff claims.

The ALJ appropriately considered Dr. Binder's testimony.  In particular, the ALJ noted Dr. Binder's cognitive assessment of Plaintiff and his finding that Plaintiff had some symptoms but that those symptoms were exaggerated. *Id.* The ALJ also noted Dr. Binder's finding that Plaintiff had a global assessment of functioning ("GAF") of 55, indicating only moderate symptoms or impairment. *Id.* Accordingly, the ALJ's RFC finding and vocational hypothetical were proper and took into account the relevant limitations for which there was support in the record. *See Bayliss*, 427 F. 3d at 1217.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision that

Plaintiff is not disabled.

**IT IS SO ORDERED**.

DATED this 24th day of September, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge